

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN



GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-4644
Re: In instances where the Tax Asses-
sor-Collector of the county or his
duly authorized and appointed
deputies on a salary fixed by the
Commissioners' Court, compile the
delinquent tax records provided
and required by Section 2 of Arti-
cle 7336f, Vernon's Texas Civil
Statutes, may the time consumed in
such work be applied against the
rate of salary paid, and considered
as "actual cost" of compiling the
records, within the maximum allowed
by said Article, to be repaid pro-
portionately from the various tax
collections and accounted for under
the fee system.

Your letter of June 9, 1942, submits for our opinion the
following questions which we quote therefrom together with the sup-
porting factual situation:

"Section 2 of Article 7336f reads as follows:

"'Any county having as many as two years' taxes
delinquent which have not been included in the delin-
quent tax record, the Collector of taxes shall within
two years from the effective date of this Act, cause
to be compiled a delinquent tax record of all delin-
quent taxes not barred by this Act; the delinquent
record shall be examined by the Commissioners' Court
and the Comptroller or governing body, corrections
may be ordered made, and when found correct and approv-
ed by them, payment for the compilation thereof shall
be authorized by actual cost to the Tax Collector,
proportionately from each the State and County taxes,
or municipal taxes, first collected from such record,

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT



Honorable George H. Sheppard, Page 2

such cost in no case to exceed a sum equal to five (5¢) cents per item or written line of the original copy of such record and in no event shall any compiling cost be charged to the taxpayer. The delinquent tax record when approved, shall be prima facie evidence of the delinquency shown thereon, and when there shall be as many as two years of delinquency accumulated which are not shown on the record, a recompilation, or a two year supplement thereto shall then be made as herein provided. The Tax Collectors shall cause to be compiled like records of taxes delinquent due any district for which they collect from tax rolls other than the State and county rolls, and when approved by the governing body of the particular district, the cost of same shall be allowed in the manner herein provided.'

"When the law first became effective, this department mailed the enclosed exhibit to the Tax Assessor-Collectors throughout the State in which we made suggestions with reference to the compilation of the delinquent tax records or supplements thereto.

"You will notice that we advised the Tax Assessor-Collectors that in a case where the record was compiled by deputies in the office, it would be necessary for them to keep an accurate account of the time spent by the deputies in compiling the record, and apply to this time the rate of salary paid to the deputies, in order to arrive at the cost for compiling the record. We also advised them that it was our opinion that it would be necessary for them to account for the record cost as fees of office. We reached the conclusion that the work could be done by deputies if the amount paid to them could be accounted for as fees of office, because of the fact that this procedure would necessarily have to be followed if the work was done by deputies in order to arrive at the State's part of the cost for compiling the record.

"In other words, we concluded that if work done by deputies could not be considered as a part of the cost of compiling the record the State in such instances would not pay any part of the cost for compiling the record.

Honorable George H. Sheppard, Page 3

"We have recently had submitted to us a certificate covering the cost for compiling a record, which shows the following amounts:

| | |
|---|---|
| W. H. Moody | $250.00 |
| Altha Mae Honeycutt | 250.00 |
| C. E. Wynne | 80.00 |
| Carbon | 3.55 |
| | $583.55 |

"The record contains 11,671 lines, and you will notice that 5¢ per line for compiling the record would total $583.55. W. H. Moody is the Tax Assessor-Collector of the county; therefore, we would like for you to advise us whether or not his charge of $250.00 can be considered as a part of the cost for compiling the record, provided he accounts for the amount as a fee of office. You will also advise us whether or not it is your opinion that our procedure of considering work done by deputies in the office is in accordance with the provisions of the law. If we are not correct in our construction as to permitting deputies to compile the record, and in the manner in which we have arrived at the State's part of the cost, we shall ask that you advise us what part of the cost, if any, can be paid by the State in cases where the work is done by deputies. We have been advised by a number of Tax Assessor-Collectors that a better record can be made by the deputies in the office because of the fact that they are more familiar with the description of the property, etc., on which taxes are delinquent."

In connection with your inquiry you submit the exhibit referred to in your letter wherein you suggested to the various Tax Assessors-Collectors of the State what you considered to be a proper compliance with the pertinent portions of Section 2 of Article 7336f, Vernon's Texas Civil Statutes, providing that "payment for the compilation thereof (the delinquent tax record required and authorized by said Article) shall be authorized by actual cost to the Tax Collector, proportionately from each the state and county taxes, or municipal taxes, first collected from such record, such cost in no case to exceed a sum equal to 5¢ per item or written line of the original copy of such record and in no event shall any compiling cost be charged to the taxpayer." (Parenthesis ours)

Honorable George H. Sheppard, Page 4

The payment provided by the above is in the nature either of the payment of actual expenses necessarily incurred by the Tax Assessor-Collector in the discharge of a statutory duty or a fee, commission or compensation for official services performed by him. We construe the procedure outlined by you in the attached memorandum or exhibit to be grounded upon the theory or conception of such allowed cost as a fee, commission or compensation coming to the tax official by reason of services performed in his official capacity and hence under the governing statutes and the recent decision of Nueces County vs. Cureton (not yet reported), by the Supreme Court of Texas, to be accounted for as a fee of office or paid into the officers' salary fund in counties governed thereby. Upon this premise, you proceed to compute the "actual cost" of compiling such delinquent tax records by relating the time consumed by the regular appointed and acting deputy, to the monthly salary allowed and authorized by due order of the Commissioners' Court, and having arrived at such cost, you then "pay" such "actual cost" by taking proportionately from state, county, municipal or district taxes collected, and causing same to be, by the said Tax Collector, accounted for as a fee of office or paid over into the salary fund, under pertinent statutes.

We find no error or fault in the method of computation arrived at by you or the ultimate disposition of the "actual cost" to be borne ratably by the various tax funds involved, but we cannot find ourselves in agreement with the fundamental proposition upon which such procedure rests, that is to say, that the cost allowed and contemplated by this statute can be considered as or converted into a fee, commission or compensation received by the Assessor-Collector in the discharge of his official duties, to be accounted for as a fee of office. On the contrary, it appears that the only purpose and intent of the Legislature, in the enactment of that portion of Section 2 of Article 7336f, hereinabove referred to, was to enable the Tax Assessor-Collector to reimburse himself for such actual costs as would be necessarily expended by him in the compilation of the delinquent tax record contemplated by this Act; and to provide for such reimbursement not only out of county taxes collected, as had theretofore been the statutory rule, but likewise out of state tax collections or the tax collections of municipalities or taxing districts, so that each of said tax collections should equitably and ratably bear the cost of compiling the records of delinquent taxes of such various taxing units. This statute does not, either expressly or by necessary implication, provide for or contemplate the collection from the taxpayer

Honorable George H. Sheppard, Page 5

or from any other outside interest or person, of the actual cost of compiling these delinquent records, but, on the contrary, it is otherwise expressly provided. The actual cost of compiling these delinquent records, either in a fixed amount or in an amount to be computed after the work is done, is not paid in or collected by the Assessor-Collector so as to be considered a fee, compensation or commission received by him and to be accounted for as a fee of office or paid into the salary fund. On the contrary, the amount of such actual cost, if any is found to exist, is taken out of moneys collected as taxes, whether state, county, municipal or taxing district, and is paid over to the Assessor-Collector ratably or proportionately from these various tax funds, on the theory purely of reimbursing such official for reasonable and necessary expenses which he is out-of-pocket, not exceeding the statutory maximum.

Hence, if the Tax Assessor-Collector of a county, himself, in his official capacity, finds the time and the means of compiling the delinquent tax records required by said Article, in addition to and along with his other official duties, no actual cost has been incurred because the entire time of this official has been purchased already for the performance of these duties by the payment of his official salary. Likewise, if his regular deputy force, in addition to the other duties with which they are charged, are able to compile these delinquent tax records, no "actual cost," within the intendment of this statute, has been incurred because the salary authorized by the commissioners' court for the payment of such deputies will take care of such costs. It is only when actual costs are expended or disbursed by the Assessor-Collector in the hiring of additional personnel or the providing of additional equipment, actually and reasonably necessary to the proper compilation of these delinquent tax records, that "actual costs" have been incurred, which may be reimbursed in the mode outlined by the statute.

We are not unmindful of the worthy considerations attending the procedure outlined by you and the good results to be attained thereby, but we are constrained, as a matter of strict law, to advise you that this procedure does not follow the requirements of the statute, either in instances where these records are compiled by the Assessor-Collector, himself, or by his duly appointed and acting deputies.

Trusting the foregoing satisfactorily answers your inquiries, we are

APPROVED JUL 20, 1942

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

PKN:ej

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Pat M. Neff*

Pat M. Neff
Assistant

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN